■ In the Matter of ELMHURST TOWERS, INC., et al., Appellants, v. TAX COMMISSION OF THE CITY OF NEW YORK, Respondent.— In consolidated proceedings to review assessments of certain real property in the Borough of Queens, City of New York, for the tax years 1961/62 through 1967/68, petitioners appeal from a final order of the Supreme Court, Queens County, dated December 6, 1967 and made after a nonjury trial, which reduced the assessments for the tax years in suit, except for the tax year 1961/62. Final order modified, on the law and the facts, as set forth below. As so modified, final order affirmed, without costs. The trial court fixed the total assessments on the subject property as follows:

| 1961/1962 | Land only | $152,000 |
| 1962/63 through 1964/65 | Land and Building | $1,660,000 per year |
| 1965/66 through 1967/68 | Land and Building | $1,670,000 per year |

The learned Trial Justice gave no reasons to justify his above determinations. Such failure of a trial court to reveal the bases or reasons for ultimate conclusions reached by it in a tax review proceeding contravenes the following specific provision contained in subdivision 2 of section 720 of the Real Property Tax Law: "The report of the referee and the decision or final order of the court finding the value of the property and the proper assessment thereof *shall contain the essential facts upon which the ultimate finding of facts is made*" (emphasis added). Notwithstanding such deficiency however, we are constrained to review the matter; the record, when read in apposition with respondent's brief, suggests the reasons for the trial court's findings. The trial court's figures with respect to the assessments on the building for the years 1962/63 through 1967/68 are identical to those of the Tax Commission. (No building assessment for 1961/62 was made.) Furthermore, the court made only nominal reductions in the land assessments. We are therefore convinced that the Trial Justice based his figures primarily upon the items advanced by respondent to justify its figures, to wit, the fact that the amount of the construction cost of the apartment house and the amount of the FHA mortgage construction loan both approximated $2,393,000. Appellants contend that both the trial court and respondent gave undue consideration to the construction cost and the size of the FHA mortgage loan and little or no consideration to the adverse financial history of the enterprise during most of the tax years in suit. The record seems to support their contention. Reliance on a mortgage for purposes of valuation ordinarily should be of no concern to a tax assessor

(*Matter of Mid-Island Shopping Plaza* v. *Podeyn*, 25 Misc 2d 972, 989, affd. 14 A D 2d 571; cf. *Glenwood Realty Co.* v. *City of East Orange*, 78 N. J. Super. 67, 72). Construction and reproduction costs are only a maximum value for which property may lawfully be assessed (*Matter of J. W. Mays, Inc.* v. *Tax Comm.*, 21 A D 2d 801, affd. 16 N Y 2d 529). With respect to income earning property held for income, the net income is usually the surest index of value (*Matter of City of New York* [*Madison Houses*], 17 A D 2d 317, 320; cf. *Matter of Mid-Island Shopping Plaza* v. *Podeyn, supra*). Appraisers for both parties testified (supported by exhibits submitted) that actual net income from the apartment house has steadily decreased during the tax years in suit and that the property's vacancy factor has been abnormally high over the period reviewed. Uncontradicted testimony for appellants indicates that the house (a 10-story building) may not be suited to the site because of the factories in close proximity thereto. Respondent's expert conceded that he would not recommend the purchase of the enterprise to anyone for $1,000,000 in cash over the same amount in a conventional mortgage. After taking all factors into consideration, i.e., construction cost, size of the mortgage loan, building site, and especially the steadily decreasing income, we believe a fair and reasonable basis for fixing the total assessment on the land and improvement for the tax years 1962/63 through 1967/68 would be to capitalize the yearly average of the suggested net income of the house for petitioners' fiscal years 1962/63 through 1965/66 at approximately 8.5% (cf. *Matter of Mid-Island Shopping Plaza* v. *Podeyn, supra*). Such yearly average approximates $132,000. We sustain the 1961/62 assessment (vacant land) fixed by the trial court in the sum of $152,000. In our opinion, that figure was fair and reasonable, since the plot contains about 25,000 square feet and is located in a fairly accessible area. In accordance with our views expressed above, we fix the assessments on the subject property for the tax years in suit as follows:

| Year | Land | Building | Total |
| --- | --- | --- | --- |
| 1961/62 | $152,000 | $ 0 | $152,000 |
| Each year 1962/63 through 1967/68 | 160,000 | $1,390,000 | $1,550,000 |

Christ, Acting P. J., Rabin, Benjamin, Martuscello and Kleinfeld, JJ., concur.